IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KAREN L. P.,[1]<br><br>              Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>              Defendant. | Case No. 3:22-cv-00166-RRB<br><br>**ORDER REMANDING FOR PAYMENT OF BENEFITS**<br>**(Docket 14)** |

### I. INTRODUCTION

Claimant, Karen P., filed an application for Social Security Disability Insurance benefits on March 20, 2017, alleging disability beginning May 5, 2016.[2] Claimant has exhausted her administrative remedies and seeks relief from this Court.[3] She argues that the determination by the Social Security Administration ("SSA") that she is not

---

[1] Plaintiff's name is partially redacted pursuant to Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Tr. 332–33.

[3] The matter has been heard twice by an ALJ, the Appeals Council having remanded the first ALJ decision "with instructions to evaluate the lay witness statements, further consider the claimant's residual functional capacity, further consider the claimant's past relevant work and, if warranted, obtain testimony from a vocational expert." Tr. 232.

disabled, within the meaning of the Social Security Act ("the Act"),[4] is not supported by substantial evidence and that the Administrative Law Judge ("ALJ") committed legal errors. Claimant seeks a reversal of the decision by the SSA and a remand for calculation of benefits or, in the alternative, for further proceedings.[5]

The Commissioner of the SSA ("Commissioner") filed an answering brief in opposition, and Claimant has replied.[6] For the reasons set forth below, Claimant's Motion at **Docket 14** is **GRANTED,** the Commissioner's final decision is **VACATED,** and the case is **REMANDED** to the SSA for payment of benefits.

## II. DISCUSSION

A. **Social Security Disability**

The Act provides for the payment of disability benefits to individuals who have contributed to the social security program and who suffer from a physical or mental disability.[7] Specifically:

> An individual shall be determined to be under a disability only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.[8]

---

[4] 42 U.S.C. § 423; 42 U.S.C. § 1381.
[5] Docket 14.
[6] Dockets 16, 17.
[7] 42 U.S.C. § 423(a).
[8] 42 U.S.C. § 423(d)(2)(A).

*Karen P. v. Kijakazi*     Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits     Page 2
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 2 of 18

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[9] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[11] In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[12] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[13] Courts "review only the reasons provided by the ALJ and may not affirm the ALJ on a ground upon which he did not rely."[14] If an ALJ commits legal error, courts will uphold the decision if it is harmless.[15] An error is harmless if it is "inconsequential to the ultimate nondisability determination."[16]

Claimant argues that the ALJ's decision is not supported by substantial evidence and that the ALJ committed legal errors in denying her benefits. Specifically, she complains that the ALJ erred by: (1) Finding she has no severe mental impairments; (2) Failing to properly weigh medical opinion evidence in determining her Physical RFC;

---

[9] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).
[10] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
[11] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).
[12] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).
[13] *Gallant v. Heckler*, 753 F.2d 1450, 1452–53 (9th Cir. 1984).
[14] *Garrison*, 759 F.3d 995, 1010 (9th Cir. 2014).
[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).
[16] *Id.* (citation omitted).

*Karen P. v. Kijakazi*  Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits  Page 3
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 3 of 18

and (3) Failing to properly evaluate her subjective statements.[17] She alleges that she is disabled due to numerous conditions causing debilitating symptoms such as chronic pain and memory loss.

**B.     ALJ Decision**

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[18] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[19] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[20]

Claimant sustained a head injury on or about November 1, 2013.[21] The ALJ took no testimony from Claimant at the first hearing.[22] At the most recent ALJ hearing held on May 12, 2021, the ALJ took testimony from Claimant and vocational expert ("VE") Thomas Weiford.[23] Claimant testified that: she does not drive; she is trained as a paralegal; she has difficulty reading, writing, and math due to memory issues; her husband is disabled and family helps with household chores and pets; she gets dizzy and it takes a long time to get dressed or take a shower; previously she was able to perform receptionist and paralegal

---

[17] Docket 15 at 22–36.
[18] 20 C.F.R. § 404.1520(a)(4).
[19] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[20] *Treichler*, 775 F.3d at 1096 n.1. The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2." *Tackett*, 180 F.3d. at 1099.
[21] Tr. 1325. It appears undisputed that Claimant sustained at least 2 additional head injuries after that date, as referenced in multiple chart notes.
[22] Tr. 292–331.
[23] Tr. 260.

*Karen P. v. Kijakazi*                                                             Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits                                                              Page 4
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 4 of 18

tasks for multiple law firms; she left work when she started "getting in trouble for getting instructions wrong," and passing out and falling down the stairs due to dizziness.[24]

Applying the 5-step process, the ALJ concluded that: **Step 1**, Claimant had not engaged in substantial gainful activity since her alleged onset date; **Step 2**, Claimant suffered from severe impairments, including degenerative disc disease of the cervical lumbar spine, vertigo/migraine disorder post head injury, bilateral carpal tunnel syndrome, and obesity; and **Step 3**, Claimant's severe impairments did not meet any medical listings.[25] The ALJ also specifically found that Claimant's alleged fibromyalgia and various mental disorders were not medically determinable impairments, and that her hearing loss, arthritis, shoulder problems, sleep problems, and somatoform disorder were all non-severe.[26]

Between Steps 3 and 4 of the five-step analysis, a claimant's Residual Functional Capacity ("RFC") is assessed. The RFC is the most someone can do despite their mental and physical limitations.[27] In determining a claimant's RFC, the ALJ must base findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by her impairments.[28] This RFC assessment is used at both Steps Four and Five,[29] and considers both physical and mental limitations.[30]

---

[24] Tr. 269–76.
[25] Tr. 235–38.
[26] Tr. 235–36.
[27] *Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[28] 20 C.F.R. § 404.1545(a)(3).
[29] 20 C.F.R. §§ 404.1520(a)(4).
[30] 20 C.F.R. §404.1545(b) & (c).

*Karen P. v. Kijakazi*  Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits  Page 5
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 5 of 18

In evaluating her RFC, the ALJ concluded that Claimant had the capacity to perform a limited range of *light* work.[31]

At **Step 4**, the ALJ found that Claimant could perform her past relevant work as a paralegal.[32] Although the ALJ was not required to proceed to **Step 5**, she made alternative findings with the assistance of testimony from a VE, concluding that Claimant was also able to perform other work in the national economy such as filing clerk and receptionist.[33]

**C.  Residual Functional Capacity**

Claimant argues that the ALJ incorrectly concluded that her documented mental impairments were "non-severe" at Step 2.[34] The Court finds a number of problems with the ALJ's RFC analysis.

First, the ALJ found that Claimant "does not have a medically determinable neurocognitive disorder, and that while she has a somatoform disorder, I find that it is non-severe because it does not cause more than mild limitations in the 'Part B' domains."[35] But

---

[31] Tr. 238–39. Categories of work include sedentary, light, medium, heavy, and very heavy. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567.
[32] Tr. 238.
[33] Tr. 248.
[34] Docket 15 at 22–26.
[35] Tr. 246. Here the ALJ is referring to the "Paragraph B" criteria which are used at Step 3 to determine if the severity of a claimant's mental impairment meets or is medically equal to the criteria of a listed impairment. These criteria "represent the areas of mental functioning a person uses in a work setting. They are: understand, remember, or apply information; interact with others;

*Karen P. v. Kijakazi*                                                                                              Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits                                                                                      Page 6
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 6 of 18

Paragraph B criteria are not the measure of whether a condition is severe for purposes of Step 2. The Court finds that the ALJ's analysis improperly conflates Steps 2 and 3 with respect to Claimant's alleged mental impairments.

Next, while any error in failing to find an impairment "severe" at Step 2 is generally harmless, the failure to then include identified "non-severe" conditions in the RFC can be harmful error. The ALJ must base the RFC findings on "all of the relevant medical and other evidence," and must consider all of the claimant's impairments, including those that are not severe.[36] "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."[37]

The ALJ gave partial weight to consultative examining physician, Clinical Psychologist Dr. Rose, whose 2017 consultative evaluation opined that Claimant's "ability to understand and apply information was mildly impaired," but that "her concentration, persistence, or pace appeared *moderately* impaired."[38] The ALJ also gave partial weight to non-examining medical expert, Dr. Buechner, who testified at the first hearing in

---

concentrate, persist, or maintain pace; and adapt or manage oneself . . . To satisfy the paragraph B criteria, your mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." Listing 12.00A2b https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.
    [36] 20 C.F.R. § 404.1545(a)(3).
    [37] Social Security Ruling ("SSR") 96–8p; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).
    [38] Tr. 245 citing Tr. 1254–61.

*Karen P. v. Kijakazi*  Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits  Page 7
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 7 of 18

February 2019.³⁹  Dr. Buechner opined that Claimant should avoid assembly line work or production rate work, which also suggests more than a mild impairment in the area of concentration, persistence or pace.  Nevertheless, the ALJ concluded that Claimant had only *mild* limitation in concentration, persistence, or pace.⁴⁰  She then included none of these limitations in the RFC.⁴¹

Finally, Claimant argues that the ALJ's failure to properly consider and account for the unanimous opinions that Claimant has a severe mental impairment is not harmless error.⁴²  The Court considers the ALJ's findings regarding Claimant's mental impairments below.

D.  **Symptom Magnification**

Claimant's alleged symptom magnification was critical to the ALJ's decision.  The ALJ found Claimant to be less debilitated than she alleged, citing ten specific instances in the record which she felt cast doubt on Claimant's supporting medical opinions.⁴³  Defendant's brief also relies heavily on alleged symptom magnification.⁴⁴

The first record cited by the ALJ indicates that Claimant underwent an EMG of the left upper and lower extremities on August 29, 2017.⁴⁵  The ALJ found that "while

---

³⁹ Claimant takes issue with the ALJ's reliance on non-examining physician testimony from Dr. Bechner at the first hearing (which was taken without the benefit of that physician hearing Claimant's testimony), and alleges a failure to develop the record, particularly in light of Claimant's pro-se status at both hearings.  Docket 15 at 32.
⁴⁰ Tr. 245.
⁴¹ Tr. 238–39.
⁴² Docket 15 at 25.
⁴³ Tr. 241.
⁴⁴ Docket 16 at 6, 8, 13, 14, and 19.
⁴⁵ Tr. 1491.

*Karen P. v. Kijakazi*  Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits  Page 8
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 8 of 18

the EMG was normal, the examiner noted that the findings were mildly compromised by effort during testing."[46] But the ALJ did not mention that the record also indicates that the decreased effort was "due to pain," not due to a lack of cooperation or "symptom magnification" by Claimant.[47] Likewise, several other chart notes indicate significant pain during exams, giveaway weakness, or allodynia, but none suggest malingering.[48] Even the provider who suggested Claimant's performance on a strength test may have lacked a "volitional component" did not question the veracity of her complaints in general.[49] All of the treating physicians actively treated Claimant's pain and other symptoms.

The ALJ also focused on the consultative evaluation of clinical psychologist Michael Rose, Ph.D., who noted "subtle indications" of symptom-magnifying or exaggeration in September 2017, but the ALJ failed to acknowledge that overall Dr. Rose found the assessment findings "reliable and valid."[50] Finally, the ALJ cited the April 16, 2018, evaluation by Richard Fuller, Ph.D., a clinical neuropsychologist, who acknowledged pain and frustration during testing, but noted that Claimant "was able to persist and not let her annoyance affect her persistence."[51] Although, Dr. Fuller stated that the "validity of the test results was questionable because of various scores on the performance validity tests,"[52] he also acknowledged that chronic pain and lack of sleep

---

[46] Tr. 241 (citing Tr. 1491).
[47] Tr. 1491.
[48] Tr. 1230, 1290, 1266, 1493, 1504, 1556.
[49] Tr. 1587.
[50] Tr. 1254–62.
[51] Tr. 1341.
[52] Tr. 1341. For a discussion of performance validity testing in neuropsychological exams, see *Penny v. State Farm Mut. Auto. Ins. Co.*, 474 F. Supp. 3d 1176, 1179 (W.D. Wash. 2020).

"reduce frustration tolerance and can impact the ability to stay focused on various tasks, reducing learning and memory."[53] Dr. Fuller qualified his results as "inconclusive because of questionable effort," but he did not suggest that Claimant was malingering or attempting to skew test results in favor of disability. Rather, he recommended continued treatment for chronic pain to "hopefully improve her functioning," as well as training in sleep hygiene and keeping a written schedule.[54]

The ALJ relied on the foregoing to justify a finding of symptom magnification. A review of the record reveals that the majority of the instances cited by the ALJ were neutral comments by the providers, which appeared negative when taken out of context in the ALJ's decision. The Court finds that the ALJ's conclusion that Claimant was engaging in widespread symptom magnification was unsupported by substantial evidence, and that conclusion infected all areas of the ALJ's analysis, as discussed below.

### E. Treating Physician Opinions

Claimant makes extensive argument regarding the appropriate weight that should be given to treating physicians under the relevant regulations,[55] as well as an

---

("[A]lthough clinical neuropsychologists are responsible for making determinations about the validity of the information and test data obtained during evaluations, the manner in which such determinations are made may vary considerably depending on the context. Symptom validity assessment "may include" specific tests, indices and observations, but need not always include tests designed to assess symptom validity.").

[53] Tr. 1345.
[54] Tr. 1345.
[55] For claims filed prior to March 27, 2017, such as this one, different regulations were in place than those for claims filed after that date. Under the relevant regulations, more weight was typically assigned to medical opinions from treating sources. "If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

*Karen P. v. Kijakazi*  
Order Remanding for Payment of Benefits  
Case No. 3:22-cv-00166-RRB  
Page 10

Case 3:22-cv-00166-RRB    Document 18    Filed 09/14/23    Page 10 of 18

informed discussion regarding why Claimant's treatment was as not "conservative" as the ALJ suggests.[56] Claimant complains that the ALJ improperly gave little weight to treating physician opinions, instead relying on the opinions of non-examining medical consultants such as Dr. Caldwell, a State agency medical consultant.[57]

Two of Claimant's treating physicians opined that Claimant experienced significant physical limitations. On April 28, 2017, general practitioner Dr. Charles Aarons opined that Claimant's physical conditions affected her hands, arms, and legs, and caused headaches such that she could not return to work "until her treatment is complete."[58] On November 20, 2018, Dr. David Roberts, a neurologist, opined that Claimant "was severely limited in her ability to lift, reach, handle objects."[59] Dr. Roberts' records indicate that Claimant suffered from "moderate to severe" daily headaches, migraines, neck pain, shoulder pain, wrist and finger tingling and locking pain, low back pain, hip pain, left leg pain, and tingling pain in the bottom of both feet.[60] Dr. Roberts described Claimant's ongoing treatment, including physical therapy and nerve blocks.

But the ALJ found these opinions were "not fully consistent with the claimant's work history," noting that after her head injury in November 2013, she continued to work full time for the next two and a half years as a paralegal.[61] The ALJ also

---

the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). (Evaluating opinion evidence for claims filed before March 27, 2017).

[56] Docket 15 at 28–31.
[57] Docket 15 at 26–32.
[58] Tr. 1221.
[59] Tr. 1437.
[60] Tr. 1438.
[61] Tr. 244–45.

*Karen P. v. Kijakazi*     Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits     Page 11
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 11 of 18

concluded that Dr. Aarons and Dr. Roberts relied, in part, on Claimant's self-reported symptoms/limitations, which the ALJ deemed "not fully reliable, given evidence of symptom magnification, poor effort, and other discrepancies."[62]

Claimant, whose alleged onset date is May 5, 2016, argues that she should not be penalized for attempting to work after her November 2013 injury, and that Dr. Roberts confirmed that her conditions were "progressively worse" over time.[63] Indeed, SSR 18-1p acknowledges that "progressive impairments . . . gradually worsen over time," and that an alleged onset date is generally related to the date a claimant stopped engaging in substantial gainful activity, regardless of the date of diagnosis.[64] The Court also notes that in addition to the progressive nature of her condition, Claimant had "three other significant head injuries" by late 2018.[65] Moreover, as discussed above, the ALJ's symptom magnification findings are not supported by substantial evidence. The ALJ has therefore failed to provide substantial evidence for failing to give more weight to Claimant's treating physicians. Dismissal of their opinions because they relied on her self-reported symptoms was error.

---

[62] Tr. 245.
[63] Docket 15 at 28 (citing Tr. 1435).
[64] See https://www.ssa.gov/OP_Home/rulings/di/01/SSR2018-01-di-01.html (last visited Sept. 7, 2023).
[65] Tr. 1435.

*Karen P. v. Kijakazi*  Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits  Page 12
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 12 of 18

## F. Mental Health Opinions

Also problematic is the ALJ's dismissal of the opinions of the State agency psychological consultant Royal Kiehl, M.D., and consultative examiner Skip Hrin, Psy.D., both of whom found more significant limitations in Claimant's abilities than the ALJ.

In September 2017, Dr. Kiehl confirmed a somatic symptom disorder and, although he found "no clear indications of neurocognitive impairment" and specifically noted that examining physicians had questioned her effort during testing, Dr. Kiehl nevertheless concluded that Claimant was capable of only "lighter unskilled work activity."[66] He found that Claimant could only carry out simple 1-2 step instructions, and would "miss some work due to mental health impairments."[67] He determined she had moderate limitations in her ability to understand and remember detailed instructions, as well as her ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.[68] The ALJ offered no explanation for giving Dr. Kiehl's opinion little weight.[69]

In September 2020, Dr. Hrin diagnosed a ***major neurocognitive disorder***, finding ***significant deficits*** in attention, executive function, and sensory motor processing.[70] But the ALJ rejected the results of testing administered by Dr. Hrin because

---

[66] Tr. 339.
[67] Tr. 341.
[68] Tr. 341.
[69] Tr. 246.
[70] Tr. 1793–1805. A speech language pathologist, Frances Seater, M.Ed., opined that due to "significant cognitive and language deficits, and her grossly fatiguing physical impairments, the claimant was not a candidate for employment." But the ALJ found that Ms. Seater was not an acceptable medical source qualified to establish a medically determinable impairment. Tr. 246.

*Karen P. v. Kijakazi* Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits Page 13
Case 3:22-cv-00166-RRB    Document 18    Filed 09/14/23    Page 13 of 18

Claimant "has established a pattern of symptom magnification and poor effort on both psychological testing and physical examinations, which raises questions about the validity of her test results and her self-reported symptoms/limitations during Dr. Hrin's . . . evaluation[.]"[71] The ALJ also expressed concern that Dr. Hrin had not reviewed any outside records in preparation for his evaluation and was "therefore not aware of these discrepancies."[72] But Dr. Hrin's 2020 neuropsychological evaluation, performed based on a referral from treating physician Dr. Roberts, clearly indicated that Claimant "was referred for neuropsychological assessment for diagnostic clarification,"[73] suggesting that the very purpose of this evaluation was to clarify the results of the evaluations of Dr. Rose in 2017,[74] and Dr. Fuller in 2018.[75] A comparison of the results of Drs. Rose, Fuller, and Hrin over the span of three years reveals similar scores on the WAIS-IV testing.[76]

| WAIS-IV Indices | Dr. Rose 9/2017 | Dr. Fuller 4/2018 | Dr. Hrin 9/2020 |
|---|---|---|---|
| Verbal Comprehension | 93 | 89 | 85 |
| Perceptual Reasoning | 92 | 82 | 90 |
| Working Memory | 77 | 66 | 71 |
| Processing Speed | 89 | 79 | 81 |
| Full-Scale IQ | 86 | 78 | 79 |

---

[71] Tr. 246.
[72] Tr. 246.
[73] Tr. 1793.
[74] Dr. Rose diagnosed Somatic Symptom Disorder, but found "no clear indications of neurocognitive impairment" noting some executive functioning deficits and suspected problems with working memory. Tr. 1261. However, the Court notes that Dr. Rose performed less than half as many tests as Drs. Fuller or Hrin. *See* Tr. 1257, 1341, and 1793.
[75] Dr. Fuller was unable to determine whether Claimant's memory difficulties were the result of multiple concussions, or from chronic pain and lack of sleep, finding the test results inconclusive regarding brain dysfunction. Tr. 1345.
[76] *See* Tr. 1258–60; 1342; and 1795–96.

*Karen P. v. Kijakazi*  
Order Remanding for Payment of Benefits  
Case No. 3:22-cv-00166-RRB  
Page 14  
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 14 of 18

While this Court cannot interpret testing scores, the Court notes the scores of Dr. Hrin fell between those of Drs. Rose and Fuller. Although Drs. Rose and Fuller each suggested the possibility of symptom magnification, Dr. Hrin identified none.[77] Despite scores that were better than those of Dr. Fuller, Dr. Hrin did not hesitate to diagnose major neurocognitive disorder due to TBI.[78]

In cases such as this one, filed prior to March 27, 2017, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."[79] The ALJ's rejection of Dr. Hrin's findings on the grounds that prior examiners had merely suggested the possibility of symptom magnification, without more, does not meet the standard of "substantial evidence," and was error.

### G. Subjective Testimony

Claimant argues that the ALJ failed to properly evaluate her subjective statements.[80] The ALJ's failure to take any meaningful testimony from Claimant over the course of two hearings is concerning. Moreover, the ALJ's refusal to give credence to Claimant's subjective statements found in her medical records is not supported by substantial evidence. The ALJ failed to provide "specific, clear and convincing reasons"

---

[77] Tr. 1805. Dr. Hrin specifically noted that Claimant "participated fully in the evaluation," suggesting that he performed his own screening for symptom magnification.
[78] Tr. 1803.
[79] *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995), as amended (Apr. 9, 1996).
[80] Docket 15 at 33-36.

*Karen P. v. Kijakazi*        Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits        Page 15
Case 3:22-cv-00166-RRB    Document 18    Filed 09/14/23    Page 15 of 18

for rejecting her statements other than the suggestion of possible "symptom magnification" on two occasions, which the Court has already discussed.[81]

## H. Remand is Warranted

This case is replete with errors by the ALJ, and the following is not an exhaustive list. The ALJ failed to give appropriate weight to Claimant's treating physicians; the ALJ took several instances in the medical record out of context to create the impression of malingering; the ALJ failed to include non-severe impairments in the RFC; and the ALJ improperly dismissed psychological testing results and opinions.

The Court also takes note of the VE testimony at the 2021 hearing. The VE testified that for unskilled jobs, most employers would not tolerate two days of unscheduled absences per month.[82] The record spans 1,846 pages containing opinions of treating, examining, and non-examining physicians who found Claimant suffered from a myriad of physical and mental conditions.

Disability is defined in the Act as "[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."[83] Dr. Roberts established that Claimant's condition had persisted for over a year when he opined in 2018 that "her condition progressed to the point where she has been

---

[81] *Vasquez*, 572 F.3d at 591.
[82] Tr. 289.
[83] 42 U.S.C. § 423(d)(1)(A).

*Karen P. v. Kijakazi* Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits Page 16
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 16 of 18

unable to work since about 2016, [and] will be unable to return to work until her treatment is completed or her symptoms reduce or resolve."[84]

A decision of the Commissioner to deny benefits will not be overturned unless it either is not supported by substantial evidence, or is based upon legal error. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The Court concludes that the ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence for finding that Claimant had engaged in symptom magnification significant enough to taint the opinion of every examining physician who opined that she had more than mild limitations. That unsupported opinion affected every aspect of the ALJ's opinion. Having carefully reviewed the administrative record, including extensive medical records, the Court concludes, based upon the record as a whole, that the ALJ's decision denying disability benefits to Claimant was not supported by substantial evidence for the reasons discussed in this Order.

With respect to whether this Court should remand for further administrative proceedings or remand for benefits, the Ninth Circuit provides clear guidance.[85] Further administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence "may well prove enlightening."[86] "[I]f we conclude that no outstanding issues

---

[84] Tr. 1436.
[85] *Treichler*, 775 F.3d at 1100–02.
[86] *Id.* (citations omitted).

remain and further proceedings would not be useful, we may . . . [find] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'"[87]

The Court has reviewed the administrative record and finds that it is adequately developed. Moreover, the Court finds that the record, taken as a whole, leaves "not the slightest uncertainty" that Claimant became disabled when she stopped working on May 5, 2016. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."[88]

### V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion at **Docket 14** is **GRANTED** and this matter is **REMANDED** for payment of benefits.

IT IS SO ORDERED this 14th day of September, 2023, at Anchorage, Alaska.

/s/ Ralph R. Beistline
RALPH R. BEISTLINE
Senior United States District Judge

---

[87] *Id.* (citations omitted).
[88] *Fair v. Bowen*, 885 F.2d at 603.

*Karen P. v. Kijakazi*  Case No. 3:22-cv-00166-RRB
Order Remanding for Payment of Benefits  Page 18
Case 3:22-cv-00166-RRB   Document 18   Filed 09/14/23   Page 18 of 18